UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

STEPHEN BAILEY,                    )
                                   )        NO.  CV-05-5070-LRS
                  Petitioner,      )
                                   )   **ORDER DENYING HABEAS CORPUS**
     -vs-                          )   **PETITION BY A PERSON IN**
                                   )   **STATE CUSTODY**
RICHARD MORGAN,                    )
                                   )
                  Respondent.      )
                                   )
_____)

**BEFORE THIS COURT** is Petitioner Stephen Bailey's second amended petition for writ of habeas corpus, which Mr. Bailey filed while he was in custody at the Washington State Penitentiary, pursuant to his 2003 conviction of the third-degree rape.[1]  Judgment and Sentence, *State v. Bailey*, Yakima County Superior Court Cause No. 02-1-02589-2.  Mr. Bailey was sentenced to 54 months of incarceration, which was the top end of the standard range.

///

_____

[1] Mr. Bailey is no longer serving his sentence as his Department of Corrections Legal Face Sheet shows that he was released from state custody on October 26, 2006.  However, the in custody requirement in order to bring a challenge under 28 U.S.C. § 2241 is satisfied in the instant case because he was in custody at the time he first filed his petition.  *See Maleng v. Cook*, 480 U.S. 488, 490-491 (1989).

ORDER - 1

Petitioner Stephen Bailey is proceeding pro se and Respondent is represented by Assistant Attorney General Alex Kostin. This matter was heard without oral argument. After careful review and consideration of the papers and the relevant state court record submitted as well as the decisions of the court of appeals denying Petitioner's direct appeal and personal restraint petition, it is hereby determined that the Petition for Writ of Habeas Corpus be **DENIED**.

## I. PROCEDURAL POSTURE OF THE CASE

Mr Bailey's habeas corpus petition presents four claims for this Court's consideration. *See* Mr. Bailey's Habeas Corpus Petition at 6-11. First, Mr. Bailey claims that DNA was found, but the results were unavailable for trial, however, the Prosecutor brought up the issue of DNA during examination and closing, but Defendant was excluded as the source of the DNA. Second, Mr. Bailey claims he was charged with second degree rape, found not guilty of second degree rape, but then found guilty of the lesser included charge of third degree rape. Mr. Bailey claims being found guilty of third degree rape constitutes double jeopardy. Third, Mr. Bailey claims that evidence was withheld. Specifically, Petitioner claims that doctors' reports and criminal history information were not given to the Defendant until the time of trial. DNA results also were not provided. Mr. Bailey claims that photo montages said to depict Defendant were false and not provided prior to trial. In addition, he claims witnesses' identities were also withheld. Lastly, Petitioner claims that his conviction should be overturned

because of prosecutorial misconduct and improper comments by the Judge. Specifically, Mr. Bailey claims Judge Hackett "pointed out my bad behavior."

This Court agrees with the State of Washington that Mr. Bailey has failed to exhaust claims one, three and four, and therefore, they are procedurally defaulted.  Moreover, this Court finds that Mr. Bailey's argument as to claim two fails on the merits.

In order to fully explore Mr. Bailey's claims, it is important to understand what occurred at Petitioner's trial.  This Court adopts the summary of the superior court proceedings as outlined in the Court of Appeals decision denying Mr. Bailey's direct appeal, and submitted by the Respondent in Ct. Rec. 16 at 2-6.  *See State v. Bailey*, Washington Court of Appeals Cause No. 22075-3-III, at 1-7.

In that decision the Court summarized: (quoting directly from the opinion)

> On December 20, 2002, the State charged Mr. Bailey with a single count of second degree rape. At trial, C.A., a 15-year-old girl, testified that while on the way home from school her ex-boyfriend, Martin, contacted her across the street from Mr. Bailey's apartment residence.  Martin offered C.A. a drink on the porch of Mr. Bailey's residence, and C.A. accepted.  C.A. said Mr. Bailey and a man named Payaso were there.  C.A. said she blacked out after drinking.  C.A. said that when she woke up, Mr. Bailey was on top of her with his penis inside her.  Others followed Mr. Bailey.

> C.A. testified Mr. Bailey's sister took her to a friend's house.  C.A. testified she went back to Mr. Bailey's house with a friend to retrieve her cell phone, "and that's when Stephen went up to the car, what did I do to you, what did I do to you?" Report of Proceedings (RP) at 33.

///

ORDER - 3

At that moment, the following occurred:

THE COURT:  All right. You do that one more time - - the defendant held up a sheet of paper that said liar on it.  You do that one more time, and you will be removed from this courtroom, and this case will proceed without you.  Is that very clear, young man?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  I want that piece of paper, Counsel.  Tear it up, please.  In fact, take all of the paper away from him. No pencils, no pens, no nothing.  All right.  Would you repeat the prosecutor's last question, please.  RP at 34.

During a recess, the trial court denied Mr. Bailey's mistrial motion arising from the "liar" sign incident.  RP at 42-43.

C.A. testified her friends belonged to a "red" gang, and that Mr. Bailey belonged to a rival "blue" gang.  RP at 54.  When defense counsel asked C.A. if a friend would not be disappointed if Mr. Bailey went to prison, the trial court interjected, "Now, she cannot testify as to what someone else is thinking." RP at 55. Defense counsel withdrew the question.

The prosecutor objected to the speculative line of questions regarding Mr. Bailey's gang theory, and the court allowed the questioning to continue.  But when defense counsel asked C.A. if she would be a hero for a friend if Mr. Bailey went to prison, the trial court interjected, "[b]ad question."  RP at 57.  Defense counsel withdrew the question and moved away from the line of questions.

Yakima Police Detective Reynaldo Garza testified Mr. Bailey denied knowing the victim and denied any involvement in a rape.  During recross, defense counsel asked Detective Garza a number of questions on the fact

ORDER - 4

that C.A. did not immediately seek medical help after the multiple rapes. The State objected, but the court permitted defense counsel to proceed. Then after a couple of questions, defense counsel asked, "Surely she would have been in a lot of pain, discomfort?" RP at 118. The trial court interjected, "That would require medical testimony." RP at 118. Counsel then withdrew the question.

Pursuant to the parties' stipulation, Yakima Police Detective Richard Schuknecht testified regarding a stipulated polygraph examination. Detective Schuknecht said Mr. Bailey answered "no" to two relevant questions indicating deceptiveness regarding whether he engaged in nonconsensual sex with C.A. RP at 149. In cross-examination, Detective Schuknecht agreed there was some possibility Mr. Bailey was being truthful even though the test showed otherwise.

Mr. Bailey defended on the theory the rape was a fabrication, an outgrowth of a gang dispute, "reds" versus "blues." Mary Bailey, Mr. Bailey's sister, testified for Mr. Bailey. She said she went to Mr. Bailey's residence on the critical date, but Mr. Bailey was not there. Ms. Bailey said she entered a bedroom, "and the lights were shut off, and it was Martin Garcia was [sic] in the room with that girl [C.A.], and she was screaming at him." RP at 179. Ms. Bailey testified, "[C.A.] didn't say who did anything to her. She just said they." RP at 180. Ms. Bailey said she then drove C.A. to her cousin's house. According to Ms. Bailey, C.A. jumped out of her car when they encountered "all the gang member guys, all reds, in pure red, pure gangsters." RP

ORDER - 5

at 182.  Ms. Bailey said C.A. reported the rape "to this guy named Roy. They call him 'Puppet.'" RP at 182.  She said the alleged gang members threatened "to shoot our house." RP at 182.

In cross-examination, Ms. Bailey claimed her brother was not a gang member, but "[h]e likes blue." RP at 191.  On re-direct, Ms. Bailey said some "red" gang members do not like her brother.  RP at 192.  When defense counsel asked Ms. Bailey if it is standard for reds to "get revenge" on blues, the trial court interrupted, "Well, she's not in a position to testify to that from personal experience." RP at 193. Defense counsel abandoned that line of questioning.

Dr. Michael James Hauke testified he treated C.A. at the hospital emergency room.  "She presented to the emergency department with a report that she had been raped." RP at 199. "[T]he patient told me that she had been raped, reportedly by several individuals." RP at 201.  His examination showed "modest injury in the area of the vagina" and other indicators consistent with "forcible intercourse."  RP at 202-03. "[T]here appeared to be some semen present." RP at 203-04.  Dr. Hauke testified that C.A. reported she had last had intercourse approximately six months before the rape.  The doctor said he was not surprised at the lack of more severe injuries because of her drinking and reported marijuana use.

In cross-examination on the lack of more severe injuries, defense counsel asked the doctor to assume hypothetically that C.A. was a virgin notwithstanding her admission to the doctor that she had previously had

ORDER - 6

sexual intercourse.  The doctor replied, "I'm not sure what you're trying to have me speculate on then." RP at 208.  The trial court interjected, "Well, let's not speculate.  You have to testify within the realm of reasonable medical certainty.  So with - are you familiar with that phrase, Doctor?" RP at 208.  The doctor replied, "Yes." RP at 208.  The trial court continued, "So any answer that you give must be within that context.  And if you cannot answer within that context, please indicate." RP at 208-09.

Defense counsel asked Dr. Hauke if he observed any "scratches or blood" on C.A.'s "face or arms."  RP at 216.  After the doctor answered, U[n]o," the trial court interjected, ''That's been asked and answered." RP at 216.

Yakima Police Officer Kerrick Ward testified C.A. pointed out the rape location on the way to the hospital.  Officer Ward related the details of C.A.'s report of being raped by several men including "Telgado," or Mr. Bailey.  RP at 243-45.  At C.A.'s request, Officer Ward and another officer went to Mr. Bailey's house to recover her cell phone. When discussing the missing cell phone with Mr. Bailey, he denied even knowing C.A.  Officer Ward noticed through the open bedroom door that the room matched C.A.'s description of the rape location, particularly an unusual light fixture.

Defense witness Annette Cabrera, Mr. Bailey's aunt, testified she lived in the apartment downstairs from Mr. Bailey.  Ms. Cabrera said she saw an unidentified young woman being ardently romantic with an

unidentified young man outside of her apartment on the relevant date. In cross-examination, Ms. Cabrera admitted to a 2000 second degree theft conviction.

The trial court instructed the jury on the elements of both second degree rape and the lesser-included offense of third degree rape.

In closing, the State partly argued:

> Now, the defense wants you to think, wants you to believe and find that she was doing this as some sort of gang revenge, some plot to get revenge for the gang that she was part of .... Well, you saw her testimony. You saw her demeanor and appearance. Does she look to you like someone who was simply trying to get even with a rival gang?

RP at 289-90.

Defense counsel argued C.A., "wasn't concerned about the rape until after she'd talked with her gang buddies." RP at 310.

Counsel then summarized:

> [I] [a]sk you to look at the fact that if Mr. Bailey goes to jail, someone who identifies with the color blue, the color reds are going to be overjoyed, may throw a big party and invite Miss Arreguin over. Main rival is in prison. I would ask you not to do that, allow her to be the hero. If she goes back, tells her friends about what happened, her friends see what happened, she's their hero now. I ask you to recognize this, see all the reasonable doubt I saw, and I think then you will be justified in coming back with a verdict of not guilty.

RP at 310.

In rebuttal, the State partly argued:

> . . . This idea of payback. This is all a big way for [C.A.] to pay back a rival gang. Think of your own common experience, folks. Think of your common sense. Nothing in any of these instructions says that you have to leave your common sense at the door before you go into the deliberation room.

ORDER - 8

> What kind of payback do rival gangs do? They do drive-by
> shootings and beat the shit out, beat the hell out of other
> gangs.
>
> THE DEFENDANT:  Only if you're scared of them.
>
> [DEFENSE COUNSEL]:  Your Honor, I'm going to object.  We don't
> have gang people here testifying.
>
> THE COURT:  Go ahead.
>
> [THE STATE]:  The point is, [C.A.] was subjected to interview
> after interview, by police, by [defense counsel] prior to
> trial, to get on the stand and essentially go through another
> interview.  That's not how you do payback.  That's not how you
> get somebody back.  It's a joke.

RP at 310-11.  *See State v. Bailey*, Washington Court of Appeals Cause No.

22075-3-III, at 1-7.  (Unpublished decision).

   Mr. Bailey appealed the jury's finding of guilt, and Judge Hackett's sentence of 54 months incarceration.  In Mr. Bailey's direct appeal, he argued that:  1. The trial court erred by impermissibly commenting on the evidence and merits of the case when it interjected its own objections during defense counsel's questioning of several witnesses; 2.  Appellant was denied his right to a fair trial when the trial court interjected its own objections during defense counsel's questioning of several witnesses; 3.  The prosecutor committed misconduct when he argued facts not in evidence during closing arguments; and 4. Appellant was denied a fair trial by prosecutorial misconduct during closing arguments.  The Court of Appeals rejected Mr. Bailey's arguments and affirmed the jury's decision and Judge Hackett's sentence.

   After his direct appeal was denied, Mr. Bailey then filed a personal restraint petition, Personal Restraint Petition, Stephen Anthony Bailey

ORDER - 9

(Petitioner) [sic], Washington Court of Appeals Cause No. 23817-2, in which he claimed four grounds for relief:

1.   I should be given a new trial or released from confinement because DNA testimony was ruled prejudicial in my case and suppressed. But the prosecutor brought it up anyways without test results.   Recently test results were received and DNA shows my innocence.

2.   The following facts are important when considering my case:   I have a copy of the documents, trial transcripts, jury questionnaires, and letters.   Maybe? My old attorney will testify!   But this matter really is about new evidence with significant probative value.

3.   The following reported court decisions:   none known.   Usually DNA evidence is "the best evidence" and probative as well.   I'm not sure if its common to suppress evidence, then speak of such a crucial subject without results, then hide the results.

4.   The following statutes and constitutional provisions should be considered by the Court: 14th Amendment & 6th Amendment.

Mr. Bailey's Petition. at 3-4.   The Washington Court of Appeals dismissed the petition.   Order Dismissing Personal Restraint Petition, *In re Bailey*, Court of Appeals Cause No. 23817-2-III.

## II. EVIDENTIARY HEARING STANDARD:

The Anti-Terrorism and Effective Death Penalty Act (AEDPA), alters the standard for determining the necessity for an evidentiary hearing. Prior to the AEDPA, *Townsend v. Sain*, 372 U.S. 293, 312-13, (1963), and *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 4,(1992) identified circumstances in

ORDER - 10

which a federal evidentiary hearing was mandatory. The AEDPA, in contrast, significantly restricts the power of district courts to grant evidentiary hearings as follows:

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--

(A) the claim relies on--

(I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense. 28 U.S.C. § 2254(e)(2) (1996).

An evidentiary hearing is not required where the petition raises questions of law only or where the issues may be resolved on the basis of the state court record. *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998); *Campbell v. Wood*, 18 F.3d 662, 679 (9th Cir.) (en banc), cert. denied, 511 U.S. 1119 (1994). Even if the petitioner's claim is not precluded under § 2254(e)(2), "that does not mean he is entitled to an evidentiary hearing -- only that he may be. 2254 (e) 2 specifies situations where evidentiary hearings are allowed, not where they are

required." *McDonald v. Johnson*, 139 F.3d 1056, 1059-60 (5th Cir. 1998) (emphasis in original).  In addition, an evidentiary hearing will be held only if the petitioner's claims, if proven, would entitle him to habeas corpus relief.  *Campbell*, 18 F.3d at 679.

For the reasons outlined below, this Court finds that Mr. Bailey is not entitled to an evidentiary hearing because he cannot satisfy the requirements of 28 U.S.C. § 2254(e)(2).  In the present case, Petitioner has failed to develop the factual basis of his claims in State court proceedings.   Further, Petitioner has not shown a new rule of constitutional law, a factual predicate that could not have been previously discovered, or that no reasonable factfinder would have found the applicant guilty of the underlying offense to warrant an evidentiary hearing on the claims.  The Court finds there is no need for further development of the facts.  Accordingly, an evidentiary hearing is denied for failure to meet the requirements under 28 U.S.C. § 2254(e)(2).

### III.  HABEAS STANDARD OF REVIEW

State court judgments carry a presumption of finality and legality. *McKenzie v. McCormick*, 27 F.3d 1415, 1418 (9th Cir. 1994), cert. denied, 513 U.S. 1118 (1995).  The petitioner must prove "by a preponderance of the evidence" the facts underlying the alleged constitutional error. *McKenzie*, 27 F.3d at 1418-19.  A state court's interpretation of state law is binding upon the federal courts.  *Oxborrow v. Eikenberry*, 877 F.2d 1395 (9th Cir. 1989), cert. denied, 493 U.S. 942 (1989).

///

ORDER - 12

Under the AEDPA, a federal court may grant habeas relief if a state court adjudication resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence.  28 U.S.C.A. § 2254(d).  "When analyzing a claim that there has been an unreasonable application of federal law, we must first consider whether the state court erred; only after we have made that determination may we then consider whether any error involved an unreasonable application of controlling law within the meaning of § 2254(d)." *Van Tran v. Lindsey*, 212 F.3d 1143, 1155 (9th Cir.), cert. denied, 531 U.S. 944, 121 S.Ct. 340 (2000).

Further, federal courts apply the *Brecht* standard to determine whether a constitutional error was harmless.  Habeas relief is warranted only if the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638, 113 S.Ct. 1710 (1993); *Bains v. Cambra*, 204 F.3d 964, 977-78 (9th Cir.) cert. denied, 531 U.S. 1037, 121 S.Ct. 627 (2000).  That is, the Petitioner is entitled to habeas relief only if he can show that any constitutional violation "resulted in 'actual prejudice.'" *Brecht*, 507 U.S. at 619.

The AEDPA prohibits a grant of relief on any claim adjudicated in state court unless the state court decision was contrary to or an unreasonable application of clearly established federal law as determined

by the Supreme Court.  28 U.S.C. §2254(d).  The AEDPA imposes a "'highly deferential standard for evaluation of state-court rulings.'" *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997).

The AEDPA "'demands that state court decisions be given the benefit of the doubt.'" *Clark,* 331 F.3d at 1067 (quoting *Woodford v. Visciotti*, 123 S.Ct. 357, 360 (2002)(per curiam)).  "This deferential review in habeas cases is premised on the fact that the state courts, as part of a co-equal judiciary, are competent interpreters of federal law deserving of our full respect." *Clark*, 331 F.3d at 1067 (citing *Williams v. Taylor*, 529 U.S. 362, 403 (2000).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411.  "Rather, that application must also be unreasonable." *Id.*

### IV. EXHAUSTION OF STATE REMEDIES

Respondent argues that Petitioner's claims, except for claim 2 dealing with double jeopardy, are unexhausted and that he is now procedurally barred from returning to state court in an effort to properly litigate the claims.  This Court agrees.

Before a federal court will consider the merits of a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, a Petitioner must demonstrate that each and every claim in the petition has been presented for resolution by the state courts.  The exhaustion requirement protects

the role of state courts in enforcing federal law, prevents the disruption of state judicial proceedings, and gives the state courts the first opportunity to examine and vindicate a right of federal constitutional magnitude. *Rose v. Lundy*, 455 U.S. 509, 518-20 (1982). *See also Granberry v. Greer*, 481 U.S. 129, 134 (1987). A Petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of habeas corpus claims pursuant to 28 U.S.C. §2254. *Rose v. Lundy*, 455 U.S. at 519 (1982).

A convicted state defendant may seek federal habeas relief only after he exhausts his available state court remedies. *U.S. ex rel. Falconer v. Lane*, 720 F.Supp. 631, 638 (N.D.Ill.1989). If he does so by obtaining a ruling on the merits of his federal claim, or by fairly presenting his claim through the state court processes, then he is entitled to have a federal court rule on his claim. *Id*. If, on the other hand, he exhausts his state court remedies by defaulting on his federal claim, then he may obtain federal relief only if he can establish one of the following: (1) that the state court's finding of procedural default was not an adequate and independent ground for its decision; (2) that he had cause for the default and was prejudiced by it; or (3) that the failure to grant him relief would result in a fundamental miscarriage of justice. *Id*.

As the State of Washington correctly argues Mr. Bailey failed to properly exhaust his first claim on direct review because he did not

ORDER - 15

present it in his appellate and pro se briefs filed in the Court of Appeals, and presented it as a non-federal constitutional violation in his personal restraint petition. Respondent's Answer, Exhibit 8, at 3. The claim is not properly exhausted, because on direct appeal Mr. Bailey had to present it as a federal constitutional violation at every level of the state court's review. In addition, Mr. Bailey did not properly exhaust the claim in the personal restraint proceeding, because he failed to petition the Supreme Court for discretionary review. *See* Picard v. *Connor*, 404 U.S. 270, 276-78 (1971). Similarly, Mr. Bailey's third and fourth claims are not properly exhausted because he did not present them at every level of state courts' review. He did not present them to the Court of Appeals, and presented them for the first time to the Supreme Court in his motion for discretionary review.

Mr. Bailey cannot show, nor does he argue, that he had cause for the procedural defaults of three of his claims. Similarly, a petitioner's own inadequacies and lack of expertise in the legal system do not excuse a procedural default. *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 907-09 (9th Cir. 1986); *Thomas v. Lewis*, 945 F.2d 1119 (9th Cir. 1991). Moreover, any additional personal restraint petition will be summarily denied by the state court because it would be deemed a successive petition. *See* RCW 10.73.140, which bars successive petitions. These claims are thus procedurally defaulted. Therefore, claims one, three and four are denied and dismissed.

///

ORDER - 16

## V. MR. BAILEY'S SECOND CLAIM FAILS ON THE MERITS

Mr. Bailey properly exhausted his second claim, however, Mr. Bailey cannot show that his federal constitutional rights were violated by the inclusion of the instruction on the "inferior degree" crime of third-degree rape.  The inclusion of this instruction did not violate Mr. Bailey's federal constitutional rights because the inclusion of the "inferior degree" crime of third-degree rape was appropriate under Washington law.  The trial court included the instruction on the second-degree rape and third-degree rape in its instructions to the jury.  Mr. Bailey was charged with second-degree rape only.  Information, *State v. Bailey*, Yakima County Superior Court Cause No. 02-1-02589-2.  As the State of Washington concedes, Mr. Bailey is correct that third-degree rape is not a "lesser included offense" of second-degree rape under Washington law.  *See State v. Charles*, 126 Wn. 2d 353 (1995) ("A lesser included offense is proper only if each element of the lesser offense is necessarily included in the charged offense and 'there is sufficient evidence to support an inference that the lesser crime was commited.'" (citations omitted)).  Third-degree rape is not a lesser included offense of the second-degree rape, because third-degree rape elements and not necessarily the elements of second-degree rape.  *State v. Ieremia*, 78 Wash. App. 746, 748 (1995).

While third degree rape is not a lesser included of second degree rape, third-degree rape is in an "inferior degree" crime of the second-degree rape.  Third-degree rape instruction is necessary when

either the defendant or the state produces affirmative evidence that the defendant was guilty only of the third-degree rape. *Id.* See also, RCW 10.61.003, which states that Defendant may be found not guilty of charged offense and guilty of any degree inferior. See also *State v. Peterson*, 133 Wash.2d 885, 891 (1997)(where the Washington State Supreme Court defines inferior offenses.) Federal courts will presume that the state courts properly applied their own law. *Woratzeck v. Stewart*, 97 F.3d 329, 336 (9th Cir. 1996).

As the State of Washington argues the testimony of the victim produced the evidence that Mr. Bailey commited third-degree rape. Because of this, the inclusion of the instruction of the "inferior degree" crime of third-degree rape was appropriate under Washington law, and consequently did not violate Mr. Bailey's constitutional rights. Therefore, his habeas corpus petition fails and is **DISMISSED WITH PREJUDICE.**

The District Court Executive is hereby directed to file this Order, provide copies to counsel and pro se Petitioner, **CLOSE THE FILE**, and **ENTER JUDGMENT** in favor of Respondent accordingly.

DATED this 14th day of December, 2007.

*s/Lonny R. Suko*

_____
        LONNY R. SUKO
    United States District Judge

ORDER - 18